[Nos. A053204, A051074, A051075. First Dist., Div. One. May 29, 1992.]

WINSTON A. MITCHELL, Plaintiff and Appellant, v.
FRANK R. HOWARD MEMORIAL HOSPITAL et al., Defendants and
Respondents.

COUNSEL

Hirschtick, Chenen, Cohen & Linden, Arthur R. Chenen and Eric E. Bronson for Plaintiff and Appellant.

Sullivan, Roche & Johnson, Theodore A. Kolb, Hanson, Bridgett, Marcus, Vlahos & Rudy, Robert L. Rusky, Jacquelyn J. Garman and Carole R. Rossi for Defendants and Respondents.

OPINION

DOSSEE, J.—In this consolidated appeal, Dr. Mitchell (appellant) appeals the dismissal of his three separate state court actions against Frank R. Howard Memorial Hospital (the Hospital) and several named individuals affiliated with the Hospital (collectively respondents). The first action was dismissed for failure to bring it to trial within five years (Code Civ. Proc.,

§ 583.310); the second action was dismissed for failing to serve the complaint within two years (Code Civ. Proc., § 583.420, subd. (a) (1)); and the third action was dismissed because all applicable statutes of limitations had run. We affirm.

## I. *Facts*

Because the procedural history of appellant's numerous lawsuits are intertwined, we will attempt to give a brief chronology of the pertinent events. In accordance with well-settled rules governing demurrers, we will accept the truth of appellant's well-pled allegations, but not his opinions and conclusions. (*Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 572 [108 Cal.Rptr. 480, 510 P.2d 1032].)

Each of appellant's lawsuits arises from the same set of facts. From July 1980 until August 1985, appellant served under oral contract as the radiologist for the Hospital, a 38-bed facility that is the only hospital in the rural town of Willits, Mendocino County, California. Substantial differences developed between appellant and the Hospital over the terms of appellant's employment. When negotiations broke down, the Hospital began searching for a new radiologist. Appellant was given notice that unless he accepted the Hospital's terms of employment, he would no longer be allowed to provide radiology services at the Hospital. On April 2, 1986, the Hospital's board of directors awarded an exclusive contract for full-time radiology services to Dr. Steven Wentworth.

*State Action No. 1*

On August 30, 1985, appellant filed a lawsuit against respondents asserting numerous causes of action, including interference with his right to practice his profession, breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, fraud, wrongful termination, invasion of privacy, and accounting. Respondents answered the complaint and asserted several affirmative defenses. Thereafter, on three separate occasions, appellant unsuccessfully sought preliminary injunctive relief to prevent the Hospital from entering into an exclusive contract with any other radiologist. Each time the trial court found that appellant had failed to show irreparable harm would result from the termination of his radiology agreement and that monetary damages would afford him adequate relief. Significantly, the court also found that appellant had failed to show the likelihood of prevailing on the merits of his action.

Discovery commenced, and appellant began taking depositions, requesting documents, and responding to interrogatories. After June 1986, there was no further activity in State Action No. 1 until March 1990.

*Federal Action*

On October 7, 1986, appellant filed a federal action against respondents. (*Mitchell* v. *Frank R. Howard Memorial Hospital*, N.D.Cal. No. 86-5790 JPV.) This action, as amended, contained three antitrust claims under state and federal law, two religious discrimination claims under state and federal law, the eight state common law claims asserted in State Action No. 1, plus two additional state common law claims for defamation and interference with prospective economic advantage. On March 4, 1987, the federal district court granted summary judgment on the federal antitrust claims, finding the Hospital had no substantial involvement with interstate commerce to support Sherman Act jurisdiction. The court also dismissed the federal religious discrimination claims because appellant, as an independent contractor, had no "employment relationship" that was protected under title VII. With the dismissal of appellant's federal claims, there was no longer any pendent jurisdiction over the remaining state law claims; consequently, appellant's federal action was dismissed in its entirety.

In August 1988, the Ninth Circuit affirmed the dismissal of the federal antitrust claim but reversed as to the discrimination claim, finding that appellant's relationship to the hospital, as alleged, was sufficiently employment-like to support title VII jurisdiction. (See *Mitchell* v. *Frank R. Howard Memorial Hospital* (9th Cir. 1988) 853 F.2d 762.) In February 1989, the United States Supreme Court denied certiorari as to the dismissal of the federal antitrust claims. (*Mitchell* v. *Frank R. Howard Memorial Hospital* (1989) 489 U.S. 1013 [103 L.Ed.2d 186, 109 S.Ct. 1123].)

Upon remand to the federal district court, appellant filed a second amended complaint reasserting the federal and state discrimination claims, the 10 state common law claims and the state antitrust claims. The Hospital moved for summary judgment on the discrimination claims, based on the undisputed fact that appellant repeatedly refused the Hospital's offer of the same contract ultimately awarded Dr. Wentworth. At the hearing in October 1989, the court expressed skepticism that appellant could prove his claim of religious discrimination. Nevertheless, a ruling on the Hospital's motion for summary judgment was deferred to accommodate appellant's request to take more depositions. The court warned appellant that if evidence of religious discrimination was not adduced, sanctions would be levied. Rather than proceeding with depositions, appellant secured respondents' stipulation to a dismissal of his federal claims with prejudice and all other state claims without prejudice. On December 26, 1989, the court dismissed the federal action in accordance with the parties' stipulation.

*State Action No. 2*

During the discussions leading to the dismissal of the federal action, appellant disclosed for the first time that two and a half years earlier, on May 11, 1987, he had filed, *but not served,* a second state court action against respondents. That action included appellant's state antitrust claim and his state religious discrimination claim, as well as the two additional claims—for defamation and interference with prospective economic advantage—that had first been asserted in the federal action. All respondents acknowledged service of the first amended complaint on March 6, 1990, two years and ten months after it was filed.

In April 1990, the respondents moved to dismiss based upon appellant's failure to serve the respondents within two years of the date he filed the complaint. (See Code Civ. Proc., § 583.420.) On July 31, 1990, the court granted respondents' motion to dismiss for failure to prosecute, finding appellant's failure to serve was "unexcused." Appellant appeals the dismissal of this action.

*Further Proceedings in State Action No. 1*

In the meantime, after almost four years of inactivity, Dr. Mitchell attempted to revive State Action No. 1 by filing an amended complaint on March 28, 1990. On May 8, 1990, respondents demurred to various causes of action. Concurrently, appellant filed a motion to specially set the case for trial before August 30, 1990, the five-year deadline for bringing the case to trial, or in the alternative, to extend the five-year period. (See Code Civ. Proc., § 583.310.) On June 4, 1990, following oral argument, the court issued its order denying appellant's motion to specially set the case for trial. On July 2, 1990, the court entered its order granting respondents' demurrer to certain causes of action, but denying it as to others.

On July 13, 1990, appellant attempted to renew his motion to specially set the case for trial. The court denied appellant's request, and in doing so, set out its reasoning: "Well, here's the deal: The reason I denied the motion was because I felt that there was a lack of diligence on the part of the plaintiff in pursuing the action. The [federal] district court basically gutted the federal action long, long ago. And then it went up and was sitting in the court of appeals for a couple of years. It seems to me that, at this late stage of the game, to expect the court that is already overburdened with cases to create a great big hole in its calendar so it can hear this case in a month or two is really very unrealistic and unfair. [¶] . . . [W]e have a problem dealing with cases that are pursued diligently, not to mention cases that are allowed to sit

on the shelves and gather dust." The court then dismissed the case on its own motion. A judgment of dismissal for failure to bring this action to trial within five years was signed on September 10, 1990. Appellant appeals from the dismissal of this action.

*State Action No. 3*

On September 14, 1990, appellant filed yet another complaint in state court which contained all of the causes of action asserted in State Action No. 1 and State Action No. 2, with the exception of appellant's wrongful discharge and discrimination claims. Respondents demurred to all of the causes of action alleged in the complaint on the ground that applicable statutes of limitations had long since run. On March 21, 1991, the trial court entered its judgment sustaining respondents' demurrer without leave to amend on the ground that appellant's action was time barred. Appellant appeals from the dismissal of this action.

## II.  *Discussion*

*Dismissal of State Action No. 1*

■ In arguing State Action No. 1 was improperly dismissed, appellant insists the court below should have excluded the time spent in federal court when calculating the five-year deadline for bringing the case to trial. In addition, appellant argues that the court abused its discretion in not granting his requests to specially set the case for trial and in denying his request to file an at-issue memorandum, as he had diligently pursued his claims against respondents.

■ In reviewing the lower court's dismissal of this action for failure to prosecute, the burden is on appellant to establish an abuse of discretion. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 331 [216 Cal.Rptr. 718, 703 P.2d 58].) We will not substitute our opinion for that of the trial court unless a clear case of abuse is shown and unless there is a miscarriage of justice. (*Ibid.*) Appellant has not carried this burden, and we shall not disturb the trial court's dismissal.

■ Code of Civil Procedure section 583.310 requires an action to be brought to trial within five years after it is commenced. Appellant, in essence, argues that the diligent pursuit of his later filed, virtually identical, federal action prevented him from getting this state court action ready for trial. He claims that until his federal action was resolved, including an appeal all the way to the United States Supreme Court, it was "impossible,

impracticable, or futile" to bring the state action to trial. (Code Civ. Proc., § 583.340, subd. (c).) The critical factor, appellant claims, is that he exercised reasonable diligence in prosecuting his claims against respondents; consequently, he should be given a trial on the merits.

It has been recognized "that even though the same cause of action is asserted in two separate suits, a stay or an appeal in one action will not toll the five-year period in the second case and each action is separately subject to the five-year period. [Citations.]" (*Nassif* v. *Municipal Court* (1989) 214 Cal.App.3d 1294, 1298 [263 Cal.Rptr. 195].) This principle is illustrated by *Manor Drug Stores* v. *Blue Chip Stamps* (1977) 71 Cal.App.3d 423 [139 Cal.Rptr. 483]. In facts which parallel our own, the plaintiff filed identical class actions in state and federal courts challenging the sale of certain securities. While plaintiff diligently pursued the federal action and exhausted all federal appellate remedies, the state action languished. After receiving a negative ruling from the United States Supreme Court, plaintiff attempted to revive the state action with approximately a year remaining to bring the case to trial before the expiration of the five-year deadline. The trial court denied plaintiff's request to expedite the proceeding, and the case was ultimately dismissed for exceeding the five-year limitation period.

On appeal, plaintiff argued that the four years during which he pursued his federal action should be excluded from the five-year computation because simultaneous prosecutions in both the state and federal forums would have been excessive and unreasonable. The appellate court rejected this argument, pointing out that plaintiff "chose to use two forums for essentially the same litigation and now seeks to avoid the penalty for its lack of diligence in prosecuting its second action—the one before us—by setting up as an excuse the pendency of its first action—the federal action." (*Manor Drug Stores* v. *Blue Chip Stamps, supra,* 71 Cal.App.3d at p. 426.) The court concluded it was neither impossible, impracticable nor futile for plaintiff to bring the state action to trial during the pendency of the federal action, and the dismissal of plaintiff's action was affirmed.

The court in *Martin* v. *K & K Properties, Inc.* (1987) 188 Cal.App.3d 1559 [234 Cal.Rptr. 161], reached a similar result. In that case the appellate court affirmed the dismissal of a state action for failure to bring the matter to trial within the statutory period notwithstanding the fact that the parties were simultaneously pursuing an appeal in the federal system on virtually identical claims. The court rejected appellants' argument that their involvement in the federal action made it impracticable and futile to bring their case to trial in the state court: "The fact that appellants were involved in the federal appellate process did not prevent them from getting ready for trial in the

state matter. Appellants, however, waited until the eve of the five-year deadline before taking such action. Appellants fail to explain why they found themselves ready to proceed to trial just before expiration of the five-year period but were unable to do so earlier." (*Martin, supra,* at p. 1567.)

We find the reasoning of *Manor Drug Stores* and *Martin* compelling. When a party makes a strategic decision to file identical actions in two forums, no judicial encouragement should be given to seeking a definitive ruling in one forum while allowing the case in the second forum to gather dust. Indeed, any ruling that it is "impracticable and futile" to prepare a case for trial because pertinent legal issues are being decided in another forum would sanction the indefinite postponement of preparing the dormant case for trial. This result would run contrary to the substantial and important policy in California requiring the expeditious resolution of litigation.

Appellant attempts to avoid the severe consequences of dismissal by relying on a number of cases where circumstances beyond a litigant's control intervened and induced the litigant to refrain from diligent prosecution. (See, e.g., *Holland* v. *Dave Altman's R.V. Center* (1990) 222 Cal.App.3d 477 [271 Cal.Rptr. 706] [stay issued by trial court]; *McRoberts* v. *Gorham* (1971) 18 Cal.App.3d 1040 [96 Cal.Rptr. 427] [parties' agreement to defer state action]; *Stella* v. *Great Western Sav. & Loan Assn.* (1970) 13 Cal.App.3d 732 [91 Cal.Rptr. 771] [pendency of appeal on crucial issue].) By contrast, the lack of diligence evidenced here was entirely of appellant's own making. After filing a complaint and engaging in minimal discovery, appellant allowed his state action to lapse for almost four years while he actively litigated the federal action. Once it became clear that his federal litigation was doomed, he once again returned to the state forum and attempted to revive an action that he had long ago abandoned. By his utter lack of diligence in pursuing his state action, appellant himself set the stage for dismissal.

Under similar reasoning, because of appellant's lack of diligence, the trial court was not required to look favorably on his belated motions designed to expedite the case for trial. Our Supreme Court in *Salas* v. *Sears, Roebuck & Co.* (1986) 42 Cal.3d 342 [228 Cal.Rptr. 504, 721 P.2d 590], held that when ruling on a motion for preference in trial setting, the trial court must consider the total picture, including the court's calendar, dilatory conduct by the plaintiff, prejudice to the defendant in the event of an accelerated trial date, and the likelihood of eventual mandatory dismissal if the request for a preferential trial date is denied. (*Id.,* at p. 349.) In the instant case, the court was justified in refusing to set a preferential trial date in view of appellant's total lack of diligence in pursuing his state action. To sanction a contrary

result and require a mandatory early trial setting in the face of such dilatory conduct "would in effect reward unreasonable procrastination to the prejudice of defendants, to diligent litigants who have had trials set and as a result will lose their priority, and to our already overburdened court calendars." (*Ibid.*)[1]

*Dismissal of State Action No. 2*

■ In arguing State Action No. 2 was improperly dismissed, appellant concedes that respondents' whereabouts were known and they could have been served within the two-year statutory period; nevertheless, he points out respondents had adequate notice of the claims in State Action No. 2 because of the pendency of identical claims in the federal action. Appellant goes on to argue that the pendency of the federal action made it "impracticable . . . or futile" to serve respondents, since "no proceedings in state court were going to be prosecuted until the federal action was completed . . . ." He urges us to overturn the dismissal of this action, claiming respondents did not show they were prejudiced by the protracted delay in service.

Code of Civil Procedure section 583.420, subdivision (a)(1) confers discretion on the trial court to dismiss an action for delay in prosecution if, among other things, "[s]ervice is not made within two years after the action is commenced against the defendant." "[T]o avoid dismissal, a plaintiff who has delayed prosecution beyond the discretionary deadlines must make some showing that the lack of activity was excusable. [Citations.]" (*Trailmobile, Inc. v. Superior Court* (1989) 210 Cal.App.3d 1451, 1455-1456 [259 Cal.Rptr. 100].)

As with State Action No. 1, appellant has relied almost exclusively on his pursuit of identical claims in the federal action to justify his inactivity in this case. By parity of reasoning, appellant's arguments are unconvincing. The fact that respondents were aware of the claims asserted in the federal action neither excuses appellant's protracted delay in serving this action nor does it negate the prejudice inherent in such a delay. (See *Kuchins v. Hawes* (1990) 226 Cal.App.3d 535, 540-541 [276 Cal.Rptr. 281] [actual knowledge of an action not a substitute for service]; *Trailmobile, Inc. v. Superior Court, supra,* 210 Cal.App.3d at p. 1457 [awareness of claim not a substitute for actual notice of lawsuit]; *County of Los Angeles v. Superior Court* (1988) 203 Cal.App.3d 1205, 1211-1213 [250 Cal.Rptr. 481] [filing of government tort claim does not excuse failure to serve lawsuit even though claims identical]; *Black Bros. Co. v. Superior Court* (1968) 265 Cal.App.2d 501, 507-509 [71

---

[1]See also *Salinas v. Atchison, Topeka and Santa Fe Ry. Co.* (1992) 5 Cal.App.4th 1 [6 Cal.Rptr.2d 446].

Cal.Rptr. 344][2] [notice of claims through workers' compensation case "quite beside the point" when defendant was not aware of plaintiff's lawsuit for almost three years].)

Finally, when the factors enumerated in rule 373(e) of the California Rules of Court are considered, it is clear the court did not abuse its discretion. It is conceded that respondents were always available for service, and appellant's failure to serve State Action No. 2 for two years and ten months after the complaint was filed was intentional. There were no settlement negotiations or discovery conducted in this case. The case does not appear to present any complex legal or factual problems. As indicated above, the pendency of the federal action did not justify appellant's inactivity. We have no doubt that justice is best served by a dismissal of this action.

*Dismissal of State Action No. 3*

In arguing State Action No. 3 was improperly dismissed, appellant claims that the statutes of limitation on the various causes of action were equitably tolled by the pendency of the federal court action. He also claims the trial court abused its discretion by not giving him an opportunity to amend his complaint to allege additional facts pertaining to the issue.

In *Addison* v. *State of California* (1978) 21 Cal.3d 313, 319 [146 Cal.Rptr. 224, 578 P.2d 941], our Supreme Court set out three requirements in deciding whether the doctrine of equitable tolling will suspend the running of the statute of limitations while an alternative remedy is pursued during the limitations period. The three requirements are: (1) timely notice to the defendant in filing the first claim, (2) lack of prejudice to defendant in gathering evidence to defend against the second claim, and (3) good faith and reasonable conduct by the plaintiff in filing the second claim. (*Ibid.*) In *Addison*, the court applied the equitable tolling principle to reverse dismissal of an action filed in state court on the basis that plaintiff had reasonably, and in timely fashion, pursued a federal remedy during the limitations period which had been dismissed for lack of jurisdiction.

The central question here is whether appellant's failure to file State Action No. 3 within the limitations period was the result of good faith and reasonable conduct. In *Addison*, the Supreme Court stressed plaintiff's good faith and reasonable conduct was demonstrated by the timely filing of his state court action only one week after the federal court declined to exercise

---

[2]Disapproved on unrelated grounds in *Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 563 [86 Cal.Rptr. 65, 468 P.2d 193], and in *Wolfson* v. *Personal Travel Service, Inc.* (1971) 3 Cal.3d 909, 911-912 [92 Cal.Rptr. 286, 479 P.2d 646].

pendent jurisdiction. The procedural history of this case presents the flip side of *Addison*. By the time appellant filed State Action No. 3, his two other virtually identical state actions had already been dismissed for failure to prosecute and more than nine months had lapsed since he dismissed his federal action after receiving a warning from the federal court that he would be required to adduce facts supporting his federal claim. While we know of no California case dealing with similar facts, we find instructive a pair of cases from the Ninth Circuit which apply California law on equitable tolling.

In *Bacon* v. *City of Los Angeles* (9th Cir. 1988) 843 F.2d 372, the court reviewed the dismissal of plaintiff's federal civil rights action for failure to bring the case within the applicable statute of limitations. The plaintiff claimed the statute of limitations was equitably tolled during the time spent pursuing an identical state court suit arising out of the same facts. The plaintiff had dismissed his state court action and had filed the federal action immediately after receiving unfavorable pretrial rulings in state court. The court accused the plaintiff of "string[ing] out state proceedings until forced to the brink of trial and then abandon[ing] those proceedings to initiate federal proceedings on precisely the same claim." (*Id.*, at p. 375.) The court found such blatant forum shopping did not demonstrate the reasonable and good faith pursuit of an alternative remedy necessary to equitably toll the statute of limitations under California law.

Similarly, in *Ervin* v. *Los Angeles County* (9th Cir. 1988) 848 F.2d 1018, certiorari denied 489 U.S. 1014 [103 L.Ed.2d 187, 109 S.Ct. 1125], the court reviewed the dismissal of a federal civil rights action based on the running of the statute of limitations. The plaintiff claimed that under California law, the statute of limitations relevant to her federal civil rights action was equitably tolled by her previously filed tort action in state court. The appellate court disagreed, noting that plaintiff was in possession of the facts of her case for perhaps as long as a year and a half prior to her filing the federal action. The court denied plaintiff the benefit of the equitable tolling doctrine, concluding that the plaintiff's "unwarranted delay in filing her federal civil rights claim was neither reasonable nor in good faith." (*Id.*, at p. 1020.)

The underlying assumption of these cases is that when the plaintiff has several alternative remedies and makes a good faith, reasonable decision to pursue one remedy in order to eliminate the need to pursue the other, the doctrine of equitable tolling will suspend the running of the statue of limitations if it becomes necessary to pursue the alternative remedy. However, equitable tolling is not available to a plaintiff whose conduct evidences an intent to delay disposition of the case without good cause; and it is certainly not available to a plaintiff who engages in the procedural tactic of

moving the case from one forum to another in the hopes of obtaining more favorable rulings. It is clear appellant falls into the second category of plaintiffs, and granting appellant leave to amend will not help to overcome the fundamental facts as they appear on this record. (See *Blank* v. *Kirwan*, *supra*, 39 Cal.3d at p. 318.) Because appellant has failed to show that he acted reasonably and in good faith by delaying the filing of State Action No. 3, the applicable statutes of limitations were not equitably tolled by his previous filing of the federal action.

The judgments of dismissal in all three actions are affirmed.

Strankman, P. J., and Newsom, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 26, 1992.